1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | JOSEPH P. CASTRO, | ) Case No.: 1:14-cv-01434 - JLT |
| 12 | Plaintiff, | ) ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 14) |
| 13 | v. | ) ORDER DIRECTING ENTRY OF JUDGMENT IN |
| 14 | CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) FAVOR OF DEFENDANT, CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL |
| 15 | | ) SECURITY, AND AGAINST PLAINTIFF JOSEPH |
| 16 | Defendant. | ) CASTRO |

17      Joseph Castro asserts he is entitled to disability insurance benefits and supplemental security

18   income under Titles II and XVI of the Social Security Act.  Plaintiff argues the administrative law

19   judge erred by not developing the record and in assessing the severity of Plaintiff's impairments at step

20   two of the sequential evaluation.  Because the ALJ applied the proper legal standards, the

21   administrative decision is **AFFIRMED**.

22                                    **BACKGROUND**

23      On May 4, 2011, Plaintiff filed his applications for benefits, in which he alleged disability

24   beginning January 2, 2001.  (Doc. 10-3 at 12)  The Social Security Administration denied the

25   applications at the initial level and upon reconsideration.  (*Id.*; Doc. 10-5 at 2-6, 12-16)  Plaintiff

26   requested a hearing, and testified before an ALJ on April 26, 2013.  (Doc. 10-3 at 12, 26)  The ALJ

27   determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

28   benefits on October 3, 2012.  (*Id.* at 9-19)  Plaintiff filed a request for review of the decision with the

1 | Appeals Council, which denied the request on July 23, 2014. (*Id.* at 2-4) Therefore, the ALJ's

2 | determination became the final decision of the Commissioner of Social Security.

3 | **STANDARD OF REVIEW**

4 | District courts have a limited scope of judicial review for disability claims after a decision by

5 | the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact,

6 | such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7 | decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's

8 | determination that the claimant is not disabled must be upheld by the Court if the proper legal standards

9 | were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health &*

10 | *Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

11 | Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

12 | reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

13 | 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole

14 | must be considered, because "[t]he court must consider both evidence that supports and evidence that

15 | detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

16 | **DISABILITY BENEFITS**

17 | To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

18 | engage in substantial gainful activity due to a medically determinable physical or mental impairment

19 | that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.

20 | § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

21 | his physical or mental impairment or impairments are of such severity that he is not only

22 | unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

23 | which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

24 |

25 | 42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

26 | *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

27 | the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

28 | gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

**A.      Relevant Medical Evidence**

Plaintiff visited his doctor for the first time in several years on April 3, 2007.  (*See* Doc.10-9 at 42-51)  He was diagnosed with chronic recurrent low back pain, chronic obstructive pulmonary disease, alcoholism, and hypertension.  (*Id.* at 51)  Due to his history of smoking and low back pain, the doctor ordered x-rays of Plaintiff's lumbar spine and chest.  (*Id.* at 15-16)  Dr. Susan Gootnick determined Plaintiff had "marked disc space narrowing at L5-S1 with a vacuum disc phenomenon" and "mild to moderate disc space narrowing from L3 through L5."  (*Id.*)  She found "no evidence of a vertebral body fracture."  (*Id.*)  Dr. Gootnick opined Plaintiff also had "[a] moderate amount of calcification … in the distal abdominal aorta and iliac vessels."  (*Id.*)  She determined the x-rays showed Plaintiff had a "[n]ormal chest."  (*Id.* at 16)

On April 9, 2007, Plaintiff was admitted to the hospital after describing "left-sided chest pain that radiated down his left arm."  (Doc. 10-9 at 35)  Plaintiff also descried "diaphoresis and shortness of breath [that] lasted for about 20-30 minutes," which occurred three times that day.  (*Id.*)  He reported he smoked "three packs of cigarettes a day," and just started taking an antihypertensive medication.  (*Id.* at 36-37)  A chest x-ray showed Plaintiff did not have congestive heart failure, and Dr. Johnson believed Plaintiff suffered from either "disease in his circumflex coronary artery or… vasospasm that [was] exacerbated by his rather prolific smoking tendencies."  (*Id.* at 37-38)  Dr. Johnson recommended that Plaintiff have a "cardiac catheterization given his very high risk" for acute coronary syndrome.  (*Id.*)

Plaintiff was transferred to a different hospital for care, and had a cardiac catheterization on

1   April 11, 2007.  (Doc. 10-9 at 18)  Dr. Robert Gwynn determined Plaintiff had a "[w]idespread

2   coronary artery spasm," which was "relieved by intracardiac nitroglycerin."  (*Id.* at 19)  He explained

3   the "left system returned to normal" with the nitroglycerin.  (*Id.* at 19)  He found the right system had

4   "a fixed, smooth narrowing at the origin…, which [was] not flow limiting, but may be a potential

5   future problem."  (*Id.* at 18-19)

6       Additional x-rays were taken of Plaintiff's lumbar spine on May 16, 2007.  (Doc. 10-9 at 32,

7   82)  Mr. Bryan Gatterman, a chiropractor, determined Plaintiff had "[s]evere discopathy at L5-S1 and

8   moderate discopathy at L4-L5 and L3-L4."  (*Id.* at 33, 83)  Mr. Gatterman opined Plaintiff had [d]iscal

9   instability at the L4-L5 level with increase in left laterolisthesis… on right lateral bending," and

10  "[s]evere restriction in left lateral bending activity."  (*Id.*)  At a follow-up appointment on May 21,

11  Plaintiff reported his pain level in his back was "4-5/10."  (*Id.* at 55)

12      Dr. Kenneth Rothman completed a "Request for Additional Medical Information" from the

13  state of California on May 30, 2007.  (Doc. 10-9 at 21-25)  Dr. Rothman noted Plaintiff had "persistent

14  pain" due to lumbar spondylosis and lumbar radiculopathy.  (*Id.* at 21)  He indicated Plaintiff was

15  receiving chiropractic therapy, and not referred to a specialist.  (*Id.* at 24-25)  Dr. Rothman believed

16  Plaintiff would be "able to perform his[] regular or customary work" by June 25, 2007.  (*Id.* at 22)

17      On June 26, 2007, an MRI was taken of Plaintiff's lumbar spine.  (Doc. 10-9 at 13)  Dr. Ross

18  determined Plaintiff had "[s]ignificant degenerative disc disease, most prominent at the L4-5 and L5-1

19  levels on the left where a combination of disc bulging and focal left protusion combine with facet joint

20  hypertrophy to cause significant left neural foraminal narrowing."  (*Id.* at 14)  Dr. Ross also found

21  "mild narrowing of the central canal of the T11-12 level."  (*Id.*)

22      Plaintiff reported he no longer had chest pain or shortness of breath on June 27, 2007.  (Doc.

23  10-9 at 17)  He said he was trying to cut down on cigarettes, but was "still smoking a lot."  (*Id.*)

24      On July 3, 2007, Plaintiff visited the office of Dr. Babak Jamasbi, upon the referral of Dr.

25  Rothman, reporting he had "low back pain of 24 years in duration, which [had] worsened since March

26  of 2007."  (Doc. 10-8 at 45)  Plaintiff reported "he originally suffered injuries to his lower back and

27  neck while working on oil rigs in 1983."  (*Id.*)  He "describe[d] surgery to his cervical spine after the

28  accident, which seem[ed] to be cervical discectomy."  (*Id.*)  Dr. Jamasbi observed that Plaintiff

4

"ambulate[d] into the examination room without difficulty," but had "some difficulty transferring onto the examination table." (*Id.* at 46)  He determined Plaintiff had "decreased active range of motion of the lumbar spine in all spines," and his sensation was "decreased to light tough at the left L3 and L4 dermatomes." (*Id.*)  Dr. Jamasbi found Plaintiff's "[m]uscle stretch reflexes [were] 2+/4 to the quadriceps and gastrocnemius on the right and 1+/4 on the left." (*Id.*)  He recommended that Plaintiff receive epidural steroid injections, and prescribed Neurontin for Plaintiff. (*Id.* at 47)

Plaintiff had a pre-operative appointment with Dr. Jambasbi on August 27, 2007. (Doc. 10-8 at 40)  He "complain[ed] of severe low back pain with radiation down both legs, left greater than right," as well as "numbness and tingling in both legs around the entire leg." (*Id.*)  Plaintiff "experienced significant edema in his feet" while taking Neurontin. (*Id.*)  He reported he had "some pain relief with this medication, but could not tolerate the swelling." (*Id.*)  Therefore, the prescription for Neurontin was discontinued, and replaced with Cymbalta. (*Id.* at 42)  Plaintiff received the epidural steroid injections in his lumbar spine on September 6, 2007. (Doc. 10-8 at 37-39)

In January 2008, Plaintiff reported he had been in a motorcycle accident recently and reported his left index finger was injured. (Doc. 10-9 at 60)  He also reported he had pain in his left side, shoulder, and low back. (*Id.* at 61)  Plaintiff continued to report low back pain in February and March, as well as "trouble sleeping [and] anxiety." (*Id.* at 63)  In April, Plaintiff reported he was "less anxious." (*Id.* at 64)  Though Plaintiff had several check-ups in 2008 and 2009, during which he reported back pain that was "4-5/10," there is no evidence of treatment throughout 2010. (Doc. 10-9 at 65-69)

Dr. Tri Minh Pham examined Plaintiff on July 7, 2011. (Doc. 10-8 at 2)  Plaintiff reported that he had injured "his back at work 30 years ago;" had previously broken ribs; had two toes amputated on his left foot; and had pain in his shoulders, back, and neck. (*Id.*)  Plaintiff said he suffered from chest pain in 2007, and "had cardiac catheterization with normal result." (*Id.*)  He was not taking any medication for his pain or hypertension, and said he had not seen a doctor since 2009. (*Id.*)  Upon examination, Dr. Pham found Plaintiff had "no tenderness" in his back, and his range of motion was normal. (*Id.* at 3)  In addition, Dr. Pham determined:

The patient is alert, oriented, with no motor or sensory deficits.  Deep tendon reflexes

are +2 equal bilaterally.  Rhomberg and Babinski signs are negative.  Muscle strength is 5/5 in both upper and lower extremities.  Gait is normal.  There is no evidence of muscle atrophy or deformation of any joints, his fine finger movement is normal, he can write, unbutton buttons, use small tools, hear, speak, and travel.  His mental status is grossly normal with no evidence of depression.

(*Id.*)  He concluded "the physical examination show[ed] no evidence of physical impairment."  (*Id.*)  According to Dr. Pham, Plaintiff was able to "walk, stand, sit, handle objects with no restriction" and "carry or lift up to 30 pounds."  (*Id.*)

On July 11, 2011, x-rays were taken of Plaintiff's lumbosacral spine upon the request of the Social Security Administration.  (Doc. 10-8 at 5)  Dr. John Martin determined Plaintiff's lumbar vertebrae had "normal stature and alignment."  (*Id.*)  He opined Plaintiff had "mild disc space narrowing at L3-L4 and L4-L5 and more marked disc space narrowing at L5-S1."  (*Id.*)  According to Dr. Martin, the x-rays showed "no spondylolysis or spondylolisthesis."  (*Id.*)  He concluded Plaintiff had "multilevel degenerative disc disease, greatest at L5-S1," and the results were "[o]therwise negative with no acute abnormality outlined."  (*Id.*)

Dr. Nasrabadi reviewed the medical record on July 21, 2011. (Doc. 10-4 at 4-9)  Dr. Nasrabadi opined Plaintiff was able to lift and carry 25 pounds frequently and 50 pounds occasionally.  (*Id.* at 6)  In addition, Dr. Nasrabadi believed Plaintiff was able to stand and/or walk for a total of "[a]bout 6 hours in an 8-hour workday," and sit "[a]bout 6 hours in an 8-hour workday."  (*Id.* at 6-7)  Further, Dr. Nasrabadi determined that Plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations.  (*Id.* at 7)  Dr. Nasrabadi believed Dr. Pham's opinion was "an overestimate of the severity of [Plaintiff's] restrictions/limitations," and "relie[d] heavily on the subjective report of the symptoms and limitations provided by [Plaintiff]."  (*Id.* at 7-9)  Therefore, Dr. Nasrabadi concluded that Plaintiff was able to perform the full range of medium work.  (*Id.* at 7)

Dr. Deborah von Bolschwing administered a consultative psychological examination on January 31, 2012.  (Doc. 10-8 at 17)  Dr. von Bolschwing observed that Plaintiff "appear[ed] to have problems remembering time frames and events."  (*Id.*)  Plaintiff said he was "able to independently complete" activities of daily living such as "washing dishes, doing laundry, and preparing simple meals."  (*Id.* at 18)  He reported also that he was "able to dress and groom himself," drive, take the bus, and "go grocery shopping unattended."  (*Id.*)  Dr. von Bolschwing determined: "[Plaintiff's]

thought process was linear.  His thought content was logical.  There were no overt delusions,

hallucinations, or other signs of a thought disorder.  His affect was mildly restricted.  His mood was

natural." (*Id.*)  She administered the WAIS-IV, and determined Plaintiff's full scale IQ was 115. (*Id.*)

Dr. von Bolschwing opined the results indicated Plaintiff's "overall intellectual ability [was] within

the average to high average range." (*Id.*)  Dr. von Bolschwing concluded:

> The claimant appears able to understand, remember, and carry out simple, detailed, and
> complex instructions without difficulty.  He was able to maintain attention, concentration,
> and pace for the duration of the evaluation.  He demonstrated adequate persistence.  He
> was able to endure the stress of the interview.  He appears able to adapt to changes in
> routine work settings.  He was able to interact with this examiner.  He is a capable of
> interacting with the public, supervisors, and co-workers.

(*Id.*)  She concluded Plaintiff's only mental impairment was "Alcohol Dependence, Sustained Full

Remission," and indicated his current GAF score was "60-65."[1]  (*Id.*)

## B.    Administrative Hearings

On July 11, 2012, the Social Security Administration notified Plaintiff that his file was ready

for review.  (Doc. 10-7 at 50)  In addition, the Administration notified Plaintiff that it was his

"responsibility to provide medical evidence" to demonstrate he had an impairment, and how severe it

was during the time he alleged disability.  (*Id.*)  Therefore, Plaintiff was to submit "[a]ll medical

records (*not duplicates*) from one year prior to the alleged onset date to the present and any other

relevant medical, school or other records not already on file." (*Id.*, emphasis in original)

Plaintiff's hearing was scheduled for December 10, 2012.  (*See* Doc. 10-5 at 41)  However,

from the record, it is not clear what occurred at the hearing on December 10, although Plaintiff

appeared.  (Doc. 10-7 at 63)  On December 13, Plaintiff submitted additional information regarding

his impairments and treatment received, reporting he was told "that [his] back is injured, heart

problems, high blood pressure [and] high colestrol [sic]." (*Id.* at 64)  He reported he had not been

---

[1] Global Assessment Functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor
considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."
American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  A
GAF score of 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR
moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.*
at 34.  A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some
difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful
interpersonal relationships." *Id.*

treated for these impairments since October 2009.  (*Id.*)

A second hearing was scheduled for April 16, 2013, at which Plaintiff "appeared in person and was unrepresented."  (Doc. 10-3 at 26)  Plaintiff reported he received the document that explained his right to representation at the hearing, and that he read and understood it.  (*Id.* at 28)  Plaintiff said he understood the right to be represented, but chose to represent himself at the hearing.  (*Id.* at 29)

Plaintiff reported he began to be treated by Dr. Gaines in February, and brought documents to give to the ALJ.  (Doc. 10-3 at 30, 35)  The ALJ indicated he would "accept the[] documents and include them in the record."  (*Id.* at 32)  The ALJ then asked: "Do you have any other documents or records you want me to consider?" to which Plaintiff responded: "No, sir."  (*Id.*)

He testified that he last worked in September 2009 as a used car salesman.  (Doc. 10-3 at 33)  He reported he stopped working because the job required "a lot of standing time, walking," which was "just too hard."  (*Id.* at 33-34)  Plaintiff said constant pain in his "lower back and upper back" made it standing and walking difficult, because the pain radiated from his back "[a]] the way down to [his] ankles."  (*Id.* at 34, 36)  Plaintiff reported that x-rays taken by Dr. Gaines indicate he had arthritis in his back.  (*Id.* at 34)  He also stated he had "a lot of trouble" with his shoulder, right arm, hands, and fingers.  (*Id.* at 37)

Further, Plaintiff reported he "thought [he] had a heart attack around March 1 or 2, and … was put in a hospital for two days for that and [his] back."  (Doc. 10-3 at 37)  He said he was checked, but the hospital "didn't find any blocked arteries or anything and sent [him] home."  (*Id.*)

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the alleged disability date of September 1, 2010.  (Doc. 10-3 at 14)  Second, the ALJ found Plaintiff "has the following severe impairments: Degenerative changes cervical spine, degenerative disc lumbar spine."  (*Id.*)  These impairments did not meet or medically equal a listed impairment.  (*Id.* at 15)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.97(c).  The claimant is able to lift and carry 50 pound[s] occasionally, 25 pounds frequently.  He is able to sit six hours, and stand and walk in combination six hours during a normal eight-hour workday.  The claimant is precluded from climbing ladders, ropes, or scaffolds, but can frequently

8

1  climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  The claimant is
2  precluded from working at heights or around hazardous machinery.

3  (*Id.* at 27)  With this residual functional capacity, the ALJ found Plaintiff was "capable of performing

4  past relevant work as a salesperson (automobiles)."  (*Id.* at 18)  Therefore, the ALJ concluded Plaintiff

5  was not disabled as defined by the Social Security Act.  (*Id.* at 18-19)

6  ## DISCUSSION AND ANALYSIS

7  Appealing the ALJ's decision, Plaintiff argues that "significant portions of Mr. Castro's

8  medical records were missing throughout the administrative proceedings."  (Doc. 14 at 2)  Plaintiff

9  contends "[t]he ALJ erred by failing to develop the record."  (*Id.* at 6, emphasis omitted)  In addition,

10  Plaintiff asserts the ALJ erred at step two of the sequential evaluation by finding his depression was

11  not severe.  (*Id.* at 8-9)

12  **A.      Duty to Develop the Record**

13  A claimant bears the burden to provide medical evidence that supports the existence of a

14  medically determinable impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Tidwell v.*

15  *Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her

16  entitlement to disability insurance benefits").  As the Supreme Court explained, it is "not unreasonable

17  to require the claimant, who is in a better position to provide information about his own medical

18  condition, to do so."  *Bowen*, 482 U.S. at 146 n.5.

19  On the other hand, the law is well-established in the Ninth Circuit that the ALJ has a duty "to

20  fully and fairly develop the record and to assure the claimant's interests are considered."  *Brown v.*

21  *Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  The Ninth Circuit explained:

22  The ALJ in a social security case has an independent duty to fully and fairly develop the
   record and to assure that the claimant's interests are considered. This duty extends to the
23  represented as well as to the unrepresented claimant. When the claimant is unrepresented,
   however, the ALJ must be especially diligent in exploring for all the relevant facts ... The
24  ALJ's duty to develop the record fully is also heightened where the claimant may be
   mentally ill and thus unable to protect her own interests.
25

26  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).

27  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians,

28  submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open

9

after the hearing to allow supplementation of the record." *Id.*

The law imposes a duty on the ALJ to develop the record only in limited circumstances.  20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination).  Accordingly, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see also Tonapetyan,* 242 F.3d at 1150 ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry").

Plaintiff contends "the record was incomplete, inadequate, and ambiguous."  (Doc. 14 at 6)  He asserts that he "advised the ALJ – in writing and under oath both before and during the hearing – that relevant treatment records were missing from the record."  (*Id.*, citing Doc. 10-3 at 34-37; Doc. 10-7 at 68)  Plaintiff contends he "made clear he had been hospitalized in March 2013 due to his heart impairment, and that his new primary care physician, Dr. Gaines, also possessed more recent treatment records."  (*Id.*)  Plaintiff argues that "missing records concern treatment in February, March, and April of 2013," and as a result "the record was inadequate because it did not include [his] 'complete medical history' as required."  (*Id.* at 6-7, citing 20 C.F.R. § 404.1512(d)(2))  Further, Plaintiff contends the record is ambiguous because Dr. Pham examined Plaintiff "and stated no physical impairment was present," though an x-ray taken four days later "demonstrated multilevel degenerative disc disease, including marked disc space narrowing at the L5-S1 level."  (*Id.* at 7)

Plaintiff mischaracterizes the record.  Notably, he did *not* notify the ALJ that treatment records were missing from the record.  On March 29, 2013, he submitted a second statement of recent medical treatment in which he indicated he was treated by Dr. Gaines on February 28, 2013 and went to Doctor's Hospital on March 5, 2013.  (Doc. 10-7 at 68)  At the hearing, Plaintiff indicated he brought additional documents for the ALJ "to read." (Doc. 10-3 at 30)  The ALJ received the documents, and asked "Do you have any other documents or records you want me to consider?"  Plaintiff responded: "No, sir."  (*Id.* at 32)

Plaintiff now contends documents he submitted to the ALJ were not considered, and attaches

1  them as "Exhibit 1" to his opening brief.  Though Plaintiff asserts he "only included … previously

2  missing records from Dr. Gaines which existed around the time of the ALJ hearing in 2013" (Doc. 14 at

3  3, n.1), a review of the exhibits indicates a majority of the documents from Dr. Gaines post-date April

4  16, 2013.  (*See, e.g.,* Doc. 14-1 at 5, 9-29)  Further, there is no information regarding what documents –

5  if any – Plaintiff submitted from Dr. Gaines at the hearing.  Accordingly, Plaintiff fails to demonstrate

6  that the record before the ALJ was incomplete, or inadequate for the ALJ to make a decision regarding

7  the limitations caused by his impairments.  Similarly, Plaintiff fails to show the record was ambiguous

8  simply because x-rays demonstrated degenerative disc disease in his spine, which physicians

9  determined did not preclude Plaintiff from performing his past relevant work as a car salesman.[2]  (*See*

10  Doc. 10-8 at 3; Doc. 10-4 at 6-7)

11      Because the record before the ALJ was not inadequate for a decision to be made, the ALJ's duty

12  to further develop the record was not triggered.  *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir.

13  2002) (duty not triggered when the medical report was adequate to make a disability determination);

14  *Mayes*, 267 F.3d at 459-60.

15  **B.      ALJ's Findings at Step Two**

16      Plaintiff contends the ALJ erred at step two of the sequential evaluation in finding his

17  depression was not a severe impairment.  (Doc. 14 at 8-9)  At step two, a claimant must make a

18  "threshold showing" (1) he has a medically determinable impairment or combination of impairments

19  and (2) the impairment or combination of impairments is severe.  *Bowen v. Yucket*, 482 U.S. 137, 146-

20  47 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Thus, the burden of proof is on the claimant

21  to establish a medically determinable severe impairment that significantly limits his physical or mental

22  ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs."  20 C.F.R.

23  §§ 404.1521(a), 416.921(a).

24      Significantly, the Ninth Circuit has determined that "[t]he mere existence of an impairment is

25  insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).  In other words, a

26

27      [2] Specifically, despite Plaintiff's reported back pain, Dr. Pham determined Plaintiff had "no tenderness" in his back, and his range of motion was normal.  (Doc. 10-8 at 2-3)  In addition, Dr. Pham found Plaintiff's muscle strength,
28  finger movements, and reflexes were not impaired.  (*Id.* at 3)  Similarly, Dr. Nasrabadi believed Plaintiff was able to perform medium exertion work despite the "subjective report of the symptoms and limitations."  (*See* Doc. 10-4 at 4-9)

1  medical diagnosis alone does not make an impairment qualify as "severe." Here, although Plaintiff

2  identifies evidence that he was diagnosed with depression, "the existence of such evidence does not

3  undermine the ALJ's findings." *See Gallardo v. Astrue*, 2008 U.S. Dist. LEXIS 84059, at \*30 (E.D.

4  Cal. Sept. 10, 2008). As the ALJ determined, Plaintiff ails to identify any evidence that supports a

5  conclusion that his depression caused significant functional limitations. (*See* Doc. 10-3 at 15)

6      Previously, this Court explained: "The role of this Court is not to second guess the ALJ and

7  reevaluate the evidence, but rather it must determine whether the decision is supported by substantial

8  evidence and free of legal error." *Gallardo*, 2008 U.S. Dist. LEXIS 84059, at \*30; *see also German v.*

9  *Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 25691 at \*11-12 (E.D. Cal. Mar. 14, 2011) ("[i]t is not for

10 this court to reevaluate the evidence"). Here, the decision of the ALJ is supported by the findings of

11 Dr. von Bolschwing, who determined Plaintiff was "able to understand, remember, and carry out

12 simple, detailed, and complex instructions without difficulty." (Doc. 10-8 at 18) When the opinions of

13 a physician, such as Dr. von Bolschwing, "rest[] on independent examination," the opinions constitute

14 substantial evidence. *Tonapetyan*, 242 F.3d at 1149; *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th

15 Cir. 2007) (when an examining physician provides independent clinical findings, such findings are

16 substantial evidence). Consequently, the ALJ's step two determination is supported by substantial

17 evidence in the record.[3] *See* 20 C.F.R. § 416.921(a).

18                         **CONCLUSION AND ORDER**

19     For the reasons set for above, the Court finds the ALJ applied the proper legal standards and

20 was not obligated to further develop the record. In addition, Plaintiff fails to demonstrate the ALJ erred

21 at step two of the sequential evaluation, because there is no evidence his depression significantly limits

22 his ability to do basic work activities. Accordingly, the Court must uphold the ALJ's determination

23 that Plaintiff was not disabled through the decision date of April 26, 2013. *Sanchez*, 812 F.2d at 510.

24 ///

25

26 ────────────

27   [3] Notably, even if the Court were to find the ALJ erred in finding Plaintiff's depression was "not severe" at step two, any error in designating specific impairments as severe at step two is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment from the severe impairments identified at step two

28 was harmless where the step was resolved in the claimant's favor). Here, step two was resolved in Plaintiff's favor because the ALJ determined Plaintiff had medically determinable severe impairments.

Based upon the foregoing, **the Court ORDERS**:

1.      Plaintiff's motion for summary judgment is **DENIED**;

2.      The decision of the Commissioner of Social Security is **AFFIRMED**; and

3.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Joseph Castro.

IT IS SO ORDERED.

Dated:   __**March 10, 2016**__                    _____**/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE